UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LASHEICA YVONNE WHITING,

Plaintiff,

Civil Action No. 13-10313
Honorable John Corbett O'Meara
Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

Defendant.
_________________________________/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [10, 12]**

Plaintiff Lasheica Yvonne Whiting ("Whiting") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [10, 12], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

## I. RECOMMENDATION

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Whiting is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [12] be GRANTED, Whiting's Motion for Summary Judgment [10] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

## II. REPORT

### A. Procedural History

On August 13, 2009, Whiting filed an application for SSI, alleging a disability onset date of August 1, 2009. (Tr. 84-86). This application was denied initially on November 5, 2009. (Tr. 59-62). Whiting filed a timely request for an administrative hearing, which was held on January 13, 2011, before ALJ Shirley Moscow Michaelson. (Tr. 25-53). Whiting, who was not represented by an attorney, testified at the hearing, as did vocational expert Harry Cynowa. (*Id.*). On August 20, 2011, the ALJ issued a written decision finding that Whiting is not disabled. (Tr. 11-19). On November 26, 2012, the Appeals Council denied review. (Tr. 1-5). Whiting filed for judicial review of the final decision on January 25, 2013. (Doc. #1).

### B. Background

#### *1. Disability Reports*

In an undated disability report, Whiting indicated that her ability to work is limited by rheumatoid arthritis. (Tr. 94). Specifically, Whiting indicated that she "can't get around" and has to "have help with everything" because she is in "constant pain." (*Id.*). Her condition first interfered with her ability to work in December of 2008, and she became unable to work on August 1, 2009. (*Id.*). However, Whiting last worked in May of 2003 and, by her own admission, she did not stop working for medical reasons. (*Id.*). Whiting completed high school and two years of college. (Tr. 98). At the time of the report, she was taking ferrous sulfate (for anemia) and Ultram and Vicodin (for pain). (*Id.*).

In a function report dated September 16, 2009, Whiting reported that she lives in an apartment with family. (Tr. 105). When asked to describe her daily activities, Whiting indicated that she is obese and spends most of her time in bed "in very severe pain." (*Id.*). She is unable to sit or stand for long periods of time because her legs swell. (*Id.*). Her condition affects her

sleep because she sometimes has difficulty getting comfortable. (Tr. 105-06). She needs help with personal care, including dressing, bathing, combing her hair, and feeding herself. (Tr. 106). She is able to prepare quick meals in the microwave, but it is "painful." (Tr. 107). She does not do housework or yard work because her feet swell "very badly" and she is unable to stand or walk for long periods of time. (*Id.*). She does not drive and only leaves the house to go to doctors' appointments. (Tr. 108). She does not shop but, instead, calls her cousin if she needs something from the store. (*Id.*). She used to enjoy writing and drawing, but she can no longer do these activities because of the pain in her hands. (Tr. 109). She has trouble getting along with others and is often angry because she is in so much pain. (Tr. 110).

When asked to identify functions impacted by her condition, Whiting checked lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, stair climbing, understanding, using her hands, and getting along with others. (*Id.*). She indicated that she can walk for only five minutes before needing to rest for one hour. (*Id.*). Whiting also indicated that she uses a walker, a cane, and a brace, but none of these devices were prescribed by a doctor. (Tr. 111).

*2. Whiting's Testimony*

At the January 13, 2011 hearing before the ALJ, Whiting testified that she suffers from rheumatoid arthritis. (Tr. 30). Her "main pain points" are in her fingers, ankles, feet, and knees. (Tr. 43). She lives with her mother, who receives SSI because she is "obese" and "can't do stuff." (Tr. 34). Whiting testified that she is able to prepare sandwiches and microwave meals; however, her mother has an aide, who cleans the house and does the grocery shopping, and her cousin comes over to help with cooking and other tasks. (Tr. 34-35). At the time of the hearing, Whiting weighed 300 pounds, down from a high of 363. (Tr. 36). She takes several

medications, including methotrexate (which causes headaches), a folic acid supplement, Motrin, and tramadol. (Tr. 31).

Previously, Whiting took classes at Henry Ford Community College, but, beginning in approximately March of 2009, she has taken only online classes on a part-time basis. (Tr. 39-41). She does not drive (and has never had a driver's license). (Tr. 33-34). Whiting testified that she can lift a gallon of milk, but she cannot walk more than one block without pain, and on some days, she just "can't get up." (Tr. 36-38, 42-43). She can sit for about twenty minutes and stand for about six minutes without pain; after that, she needs to alternate positions or stretch. (Tr. 39, 42-43). She testified that, some days, she needs to lie down because her pain is so bad, and, as a result, she would be unable to sustain regular attendance at any job. (Tr. 49).

*3. Medical Evidence*

*a. Treating Sources*

On March 26, 2009, Whiting complained of joint pain at Detroit Receiving Hospital.[1] (Tr. 200-01). Her rheumatoid factor was elevated at 135.1, but on physical examination, she was stable with no warmth or swelling of her joints. (Tr. 178, 201). On May 4, 2009, Whiting presented to the emergency room at Beaumont Hospital, again complaining of joint pain. (Tr. 151). She was in no acute distress upon physical examination, however. (Tr. 153).

On May 20, 2009, Whiting was seen by Dr. Patricia Dhar, a member of the Wayne State University Physician Group. (Tr. 132-34). Whiting complained of pain in her knees, feet, shoulders, back, and fingers since December of 2008. (Tr. 132). At the time of this visit, she indicated that she was taking Tylenol and Naprosyn; with those medications, she "really [did] not have much joint pain …." (*Id.*). On physical examination, she was obese but had full range

[1] Prior to the administrative hearing, the record contained very little evidence regarding Whiting's rheumatoid arthritis. However, the ALJ sought and received additional treatment records after the hearing. (Tr. 30; 125-202).

of motion in her joints and no tender points. (Tr. 133). Dr. Dhar's impression was nonspecific polyarthralgia, which was well-controlled with medication. (*Id.*). Dr. Dhar felt that, although Whiting had a positive rheumatoid factor, she did not have rheumatoid arthritis. (*Id.*). She encouraged Whiting to find a rehabilitation program to help her exercise and lose weight. (Tr. 133-34).

On June 4, 2009, Whiting presented at Detroit Receiving Hospital, seeking a second opinion of her joint pain. (Tr. 198-99). It appears that Whiting saw Dr. Sarmad Almansour, a rheumatologist, for this purpose on August 5, 2009. (Tr. 137). Her physical examination was unremarkable, and she had full range of motion of her joints. (*Id.*). She was assessed with rheumatoid arthritis and was scheduled to begin physical therapy the following week. (*Id.*). The record contains no evidence that Whiting ever attended physical therapy or participated in a diet and exercise program, as recommended.

After her application date (August 1, 2009), Whiting had intermittent blood work performed on August 5, 2009, August 16, 2009, August 17, 2009, and November 4, 2009 (Tr. 169-70), but no treatment records for those dates were submitted.[2] On November 10, 2009, Whiting presented at the Harper Hospital emergency room, complaining of pain in both knees and swelling in her right foot. (Tr. 166). On physical examination, she was in no acute distress, had no crepitus in her knees with flexion or extension; had no warmth, swelling, or erythema in her legs; and was able to walk without difficulty. (Tr. 167). She was diagnosed with a flare-up of her arthritis, prescribed pain medication, and advised to follow up with her own doctor. (*Id.*).

Whiting had additional blood work done on January 22, 2010. (Tr. 170-71). On May 11, 2010, blood tests showed that Whiting's rheumatoid factor was still elevated at 133.9. (Tr. 171).

[2] Whiting testified at the hearing that she has to "get blood drawn regularly," so it is quite possible that she did not see a physician on any of these dates. (Tr. 46-47).

Between this date and October 20, 2010, when she again had blood work done, there is no evidence of any treatment in the record. (*Id.*).

After the ALJ issued her decision, Whiting submitted additional medical records, consisting of x-rays obtained of her feet, hands, wrists, and cervical spine on September 27, 2011. (Tr. 207-18). The x-rays of Whiting's right foot showed multiple erosions and generalized soft tissue swelling. (Tr. 207). X-rays of her left hand and wrist showed possible early erosions, but no evidence of rheumatoid arthritis. (Tr. 217). X-rays of her left foot, right hand, and right wrists showed tiny erosions, but no other significant abnormalities. (Tr. 209, 211, 215). The cervical spine x-ray showed a slight abnormality in the odontoid process (a portion of the second cervical vertebra), but was otherwise normal. (Tr. 213).

*b. Consultative Sources*

On October 13, 2009, Whiting underwent a consultative physical examination with Dr. Anjum Sadiq. (Tr. 141-47). At this examination, Whiting complained of swelling and "sharp, stiffening pain" that radiated through her shoulders, wrists, hands, back, knees, ankles, and feet. (Tr. 141). Dr. Sadiq noted that Whiting's treatment had been conservative. (*Id.*). During the physical examination, she was "not cooperative" and exhibited "poor effort." (*Id.*). Dr. Sadiq observed no redness, tenderness, warmth, or effusion of Whiting's shoulders, wrists, hands, knees, or feet, but Whiting resisted performing range of motion testing and extension of rotation movements. (Tr. 141-42). She had no spine tenderness or muscle spasms. (Tr. 142). She was able to pick up a pencil, pick up a coin, button a shirt, tie her shoes, and make a fist. (*Id.*). Her grip strength was -3/5 bilaterally "with poor effort." (*Id.*). Her gait revealed no stumbling, lurching, falling, pain, atrophy, or instability; however, she stated that she could not do heel, toe, or tandem walking, or squatting. (*Id.*). However, Dr. Sadiq noted that "[Whiting] is not using an

ambulatory aide [and] is not in need of one." (*Id.*). She was able to dress, undress, and get on and off the table with difficulty. (*Id.*).

*4. Vocational Expert's Testimony*

Harry Cynowa testified as an independent vocational expert ("VE"). (Tr. 49-51). First, the VE testified that Whiting had no past relevant work. (Tr. 49). Then, the ALJ asked the VE to imagine a claimant of Whiting's age, education, and work experience, who could perform light or sedentary, unskilled work, with no more than occasional fine and gross manipulation, so long as she had the opportunity to alternate at will between sitting and standing. (Tr. 49-50). The VE testified that the hypothetical individual would be capable of working as an information clerk at both the light and sedentary levels (4,000 jobs at each level in southeastern Michigan), as well as the sedentary job of security monitor (1,500 jobs). (Tr. 50).

**C. Framework for Disability Determinations**

Under the Act, SSI is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" in relevant part as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months,

> and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**D. The ALJ's Findings**

Following the five-step sequential analysis, the ALJ found that Whiting is not disabled under the Act. At Step One, the ALJ found that Whiting has not engaged in substantial gainful activity since August 13, 2009, her alleged onset date. (Tr. 13). At Step Two, the ALJ found that Whiting has the severe impairments of rheumatoid arthritis and obesity.[3] (*Id.*). At Step Three, the ALJ found that Whiting's impairments do not meet or medically equal a listed impairment. (Tr. 14).

The ALJ then assessed Whiting's residual functional capacity ("RFC"), concluding that she is capable of performing unskilled light work, except that she must be able to alternate between sitting and standing as needed, and is limited to no more than occasional fine or gross

[3] On November 5, 2009, Dr. Tariq Mahmood, a state agency single decisionmaker, examined Whiting's medical records and concluded that her impairments are non-severe. (Tr. 148-49). However, the ALJ disagreed with Dr. Mahmood's assessment and gave it no weight. (Tr. 17).

manipulation. (Tr. 14-17).

At Step Four, the ALJ determined that Whiting has no past relevant work. (Tr. 17). At Step Five, the ALJ concluded, based in part on the VE's testimony, that Whiting is capable of performing a significant number of jobs that exist in the national economy. (Tr. 17-18). As a result, the ALJ concluded that Whiting is not disabled under the Act. (Tr. 18).

**E. Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**F. Analysis**

In her motion for summary judgment, Whiting argues (1) that the ALJ erred in relying on the VE's testimony that there are a significant number of jobs in the national economy that she can perform; (2) that, in light of her September 2011 x-rays, which were not considered by the ALJ, her case should be remanded pursuant to sentence six of 42 U.S.C. §405(g); and (3) that the Court should order the Social Security Agency to alter the filing date of her new application for benefits. Each of these arguments will be discussed in turn.

*1. The ALJ Did Not Err in Relying on the VE's Testimony*

In her decision, the ALJ found that Whiting is capable of performing unskilled light work, except that she must be able to alternate between sitting and standing as needed, and is limited to no more than occasional fine or gross manipulation. (Tr. 14-17). The ALJ then

concluded, based in part on the VE's testimony, that Whiting is capable of performing a significant number of jobs that exist in the national economy. (Tr. 17-18). In her motion, Whiting argues that the ALJ erred in failing to ask questions of the VE that properly accounted for her need to alternate between sitting and standing. This argument is without merit.

Whiting relies on Social Security Ruling ("SSR") 83-12. (Doc. #10 at 12-14). As an initial matter, this Ruling does not directly apply in this case because it concerns claimants with only exertional impairments (*see* SSR 83-12 ("Purpose: to clarify policies applicable …[where] an individual has only exertional limitations…")), whereas the ALJ found that Whiting has both exertional and nonexertional impairments. (Tr. 14). Regardless, however, to the extent the Ruling is instructive in this case, the portion quoted by Whiting actually supports the ALJ's decision. Specifically, the Ruling provides:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for a while before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)
>
> There are some jobs in the national economy – typically professional and managerial ones – in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a [vocational specialist] should be consulted to clarify the implications for the occupational base.

SSR 83-12, 1983 WL 31253, at *4 (emphasis added). The Ruling defines the term vocational

specialist to include "all vocational resource personnel." *Id.* at *2.

In accordance with this Ruling, the ALJ sought testimony from a vocational expert to determine whether jobs exist in the national economy that could be performed by an individual with Whiting's limitations. (Tr. 49-51). In response to hypothetical questions posed by the ALJ, the VE testified that an individual with the same vocational profile and limitations as Whiting could perform the jobs of security monitor (at the sedentary level – 1,500 local jobs) and information clerk (at both the light and sedentary levels – 4,000 local jobs at each level). (*Id.*).

In *Sharp v. Barnhart*, 152 F. App'x 503, 506-07 (6th Cir. 2005), the Sixth Circuit found, under similar circumstances, that a hypothetical question posed to a VE limiting a claimant to unskilled work that allowed for a sit/stand option did not contravene SSR 83-12. In that case, the court held that the hypothetical question posed to the VE – which included the option to sit/stand at will – sought "to identify only those jobs that [the claimant's] impairments would allow him to perform." *Id.* at 507. According to the court, "This accords with the ruling's directive that '[i]n cases of unusual limitation of ability to sit or stand, [an expert] should be consulted to clarify the implications for the occupational base.'" *Id.* (quoting SSR 83-12). Therefore, as in *Sharp*, the ALJ here complied with SSR 83-12 when she sought testimony from the VE regarding the effect of a sit/stand option on the occupational base.[4]

[4] Any argument that the ALJ erred in finding that Whiting could perform a job with a sit/stand option lacks merit. The ALJ appropriately noted that Whiting's physical examinations and conservative treatment were largely inconsistent with the level of disabling pain she reported. (Tr. 15-17). She noted that various records showed Whiting "had full range of motion in all of her joints with a normal neurological examination…had no trigger points or swollen joints…[failed to] attend[] any type of physical therapy or participate[] in a diet and exercise program as recommended, [and]…exhibited poor effort [during some examinations]..." (Tr. 15). The ALJ also referenced a physical exam in which Whiting "was stable with no warmth or swelling of her joints," another where she "was in no acute distress on physical examination," and still another where "she was in no acute distress, had no crepitus in her knees, her joints had no warmth or swelling, and was able to walk without difficulty" and was treated conservatively

Whiting also takes issue with the ALJ's conclusion that there are jobs performed at the light exertional level that would allow for a sit/stand option. (Doc. #13 at 2-3). In support of this argument, Whiting relies on 20 CFR §404.1567(b), which defines "light work," in relevant part, as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

*Id.* However, SSR 83-12 explicitly recognizes that there are some "light" jobs that can accommodate a sit/stand option:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing.
>
> * * *
>
> In cases of unusual limitation of ability to sit or stand, a [vocational specialist] should be consulted to clarify the implications for the occupational base.

1983 WL 31253, at *4. In this case, the ALJ sought testimony from the VE as to what light jobs (if any) an individual with Whiting's limitations – including the need to sit/stand at will – could perform.[5] (Tr. 49-51). In light of the VE's testimony about the availability of such jobs,

---

with pain medication. (Tr. 16). She also noted Whiting's ability to take at least some online college courses. (Tr. 17). Thus, the ALJ's conclusions that the "record simply does not support [Whiting's] testimony regarding the level of her pain or the frequency and/or severity of her rheumatoid arthritis flares," and that she could perform a sit/stand option job, are supported by substantial evidence. (Tr. 16, 17).

[5] Whiting also argues that the VE's testimony is "confusing" and "contradictory," in that, after the ALJ indicated that she wanted to "get rid of the sedentary jobs," the VE identified two sedentary jobs that Whiting could perform (security monitor and information clerk). (Doc. #13 at 1-2 (citing Tr. 49-50)). Although the exchange between the ALJ and the VE is not a model of clarity, Whiting has identified – at most – harmless error. The ALJ specifically found that

substantial evidence supports the ALJ's finding that Whiting can perform jobs existing in significant numbers in the national economy.

2. *Whiting is Not Entitled to a Sentence Six Remand*

Whiting also argues that, pursuant to sentence six of 42 U.S.C. §405(g), the Court should remand the case to the ALJ for consideration of her September 27, 2011 x-rays, which were submitted for the first time to the Appeals Council. (Doc. #10 at 14-16). Remand to consider additional evidence is appropriate only when the evidence is new and material, and good cause is shown as to why it was not presented at the prior proceeding. *See* 42 U.S.C. §405(g); *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984). Evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). Here, the medical records at issue reflect x-rays taken in September of 2011. (Tr. 207-18). Thus, the records can be considered "new" evidence, as they did not exist at the time of the January 13, 2011 hearing. However, even if Whiting could establish "good cause" for her failure to submit these records sooner, she has failed to demonstrate that these records are "material."[6]

---

Whiting has the RFC to perform a reduced range of light work; thus, the VE's testimony clearly establishes that, at a minimum, she could perform the 4,000 light level information clerk jobs identified. *See Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 579 (6th Cir. 2009).

[6] "Good cause" requires the claimant to demonstrate "a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357. As this court recently recognized, "'Good cause' is *not* established solely because the new evidence was not generated until after the ALJ's decision; the Sixth Circuit has taken a 'harder line' on the good cause test." *Richardson v. Comm'r of Soc. Sec.*, 2012 WL 4210619, at *4 (E.D. Mich. Aug. 27, 2012) (citing *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)) (emphasis in original). A plaintiff attempting to introduce new evidence "must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision." *Richardson*, 2012 WL 4210619, at *4. Here, Whiting has not even attempted to explain why she failed to obtain and submit x-rays sooner; however, whether she satisfies the "good cause" standard is a moot point in light of the Court's findings as to the evidence's materiality.

Courts have held that additional evidence is material only if it pertains to the claimant's condition prior to the date of the ALJ's decision; evidence of a subsequent deterioration in that condition provides no basis for remand. *See Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1984); *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988). Moreover, evidence is "material" only if there is "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 712. In this case, Whiting has failed to establish that the September 2011 x-rays are "material" under these standards.

Whiting argues that the x-rays are material because they "clearly indicate erosions which [] are accepted as a progression in the severity of rheumatoid arthritis." (Doc. #10 at 16). This argument is not persuasive for several reasons. First, to the extent Whiting points to these x-rays as evidence that her rheumatoid arthritis is worsening, such an argument fails. There are no earlier x-rays in the record that would allow for comparison; thus, one simply cannot discern whether Whiting's condition was, in fact, worsening. Moreover, as set forth above, evidence of a deterioration in her condition does not provide a basis for remand. *See Sizemore*, 865 F.2d at 712. In addition, Whiting has not established that the ALJ would have reached a different result if presented with the x-rays. The foot and hand x-rays show possible early erosions in the left hand, but no evidence of rheumatoid arthritis; tiny erosions in the right wrist; and a small erosion in the left foot. (Tr. 209, 211, 215). The cervical spine x-ray shows a slight abnormality in the odontoid process, but is otherwise normal. (Tr. 213). These findings are consistent with the other record evidence discussed above. They are also consistent with the ALJ's conclusions that although Whiting suffers from rheumatoid arthritis, she can perform light work, so long as she can alternate between sitting and standing and only occasionally engage in fine or gross

manipulation. Whiting simply has not explained how these x-rays – which are not accompanied by any treatment notes – would have altered the ALJ's decision. Indeed, these x-rays were before the Appeals Council it when it denied Whiting's request for review, which is further evidence that they are not material. (Tr. 1-5).

For all of these reasons, Whiting has not established a reasonable probability that the Commissioner would have reached a different conclusion on the issue of disability if she was presented with the new evidence prior to issuing her decision. As such, Whiting is not entitled to a sentence six remand.

*3. There is No Statutory Authority Supporting Whiting's Request that this Court Order the Agency to Alter the Filing Date of Her Recent Application for Benefits*

Whiting also asks that this Court order the Social Security Agency (the "Agency") to change the effective date of an SSI application she filed after the Appeals Council denied her request for review. (Doc. #10 at 14-16). Specifically, Whiting asserts:

> It is common practice for the Notice of Appeals Council Action made by the Appeals Council to include a provision for allowing an earlier effective filing date on a subsequently filed application. With relation to Supplemental Security cases it is generally indicated that a subsequent filing within 60 days of the Notice of Appeals Council Action will allow for an effective date commensurate with the date of the later evidence. In the matter at bar, it is respectfully suggested that a proper date would be September 27, 2011, when the radiographic examinations occurred.

(*Id.* at 15).

Whiting cites no statutory authority conferring jurisdiction on this Court to order any action on an application filed after the Appeals Council denied her request for review. As the Commissioner points out, neither the record nor Whiting's motion contains any significant information regarding an application she filed after receiving the Appeals Council's notice denying her request for review. (Doc. #12 at 10). Specifically, Whiting does not indicate that

she exhausted her administrative remedies with respect to a new application. She seeks judicial review pursuant to 42 U.S.C. §405(g) and 1383(c)(3), which, together, provide that a final decision of the Commissioner, made after a hearing, is subject to judicial review. (Doc. #10 at 6). Here, where Whiting has not shown that she obtained a final decision, made after a hearing, on any new application for benefits, this Court does not have jurisdiction to review or modify any actions taken by the Agency with respect to that application.

In her reply brief, Whiting quotes extensively from SSR 11-1p, 2011 WL 3962767 (July 28, 2011), which she asserts "clearly addresses the provisions by which evidence submitted during the Appeals Council procedure is handled and applied to subsequent applications." (Doc. #13 at 4). Even assuming this is true, the portions of the Ruling quoted by Whiting provide no support for the type of action she now requests of this Court. Specifically, the Ruling addresses two situations in which additional evidence is submitted while a claim is pending at the Appeals Council. SSR 11-1p, 2011 WL 3962767, at *3. In the first situation, when the Appeals Council determines that the new evidence relates to the period on or before the date of the hearing decision, it "will consider it, together with the entire record." *Id.* In Whiting's case, it appears this is exactly what was done: the Appeals Council's Notice indicates that it "received additional evidence which [was made] part of the record." (Tr. 5). In the second situation, where the Appeals Council determines that the additional evidence does not relate to the period on or before the hearing decision, it returns the additional evidence to the claimant. SSR 11-1p, 2011 WL 3962767, at *3. It is in that situation – which appears entirely inapplicable on the facts of this case – that the Ruling indicates the date the claimant requested Appeals Council review should be the filing date for a new, subsequently-filed application for benefits. *Id.* Thus, the Ruling relied on by Whiting does not provide for the type of action she requests of this Court.

## III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [12] be GRANTED, Whiting's Motion for Summary Judgment [10] be DENIED, and the ALJ's decision be AFFIRMED.

Dated: September 20, 2013
Ann Arbor, Michigan

s/David R. Grand
DAVID R. GRAND
United States Magistrate Judge

**NOTICE**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 20, 2013.

s/Felicia M. Moses
FELICIA M. MOSES
Case Manager